FILED

2014 Nov-24  PM 02:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## (SOUTHERN DIVISION)

| | |
|---|---|
| BENNY SELMAN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | )   Civil Action No. |
| EQUIFAX INFORMATION | ) |
| SERVICES, LLC; and CORELOGIC CREDCO, | ) |
| LLC, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW the plaintiff, BENNY SELMAN ("Plaintiff"), by and through the undersigned counsel, and for Plaintiff's complaint, based on investigation of counsel and based on information available to Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §1681, *et seq*. (Fair Credit Reporting Act).

2. Congress, when it enacted the FCRA in 1970, mandated the existence and use of reasonable procedures to assure the maximum accuracy of the personal and financial information compiled concerning consumers and sold to users by consumer reporting agencies ("CRAs").

1

3.      On December 4, 2003, President George W. Bush signed into law the Fair and Accurate Credit Transactions Act ("FACTA").

4.      This legislation gives consumers unprecedented tools to fight identity theft  and continued access to the most dynamic credit markets in the world. With a free credit report and powerful new tools to fight fraud, consumers have the ability to better protect themselves and their families.[1]

5.      In addition to accounts reported due to identity theft, mixed files are a serious problem in the credit reporting industry.  Mixed files occur when information relating to one consumer is placed in the file of another consumer.

6.      Mixed files create a false description of a consumer's credit history. Further, mixed files result in the disclosure of a consumer's most personal identifying and financial information absent the consumer's knowledge, consent, or permissible purpose.

7.      Mixed files also result in the debt collection harassment of innocent consumers because debt collectors use CRA databases to "skip trace" debtors and locate the alleged debtor's address and telephone number.

8.      Mixed files are not a new phenomenon.  Equifax has been on notice of the existence of mixed files for at least thirty (30) years.  *See Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509 (5th Cir. 1982).

---

[1]      http://georgewbush-whitehouse.archives.gov/news/releases/2003/12/20031204-3.html      last visited November 23, 2014.

9.    Mixed files occur despite consumers' unique personal identifying information, such as Social Security numbers.

10.    Equifax's matching logic allows information to be included in a consumer's file even when the Social Security numbers do not match nine out of nine digits.

11.    In the mid-1990's, the Federal Trade Commission ("FTC") and various state attorney generals' offices, including Alabama, Arkansas, California, Connecticut, Delaware, Florida, Idaho, Illinois, Louisiana, Michigan, Minnesota, Missouri, Nevada, New Hampshire, New Mexico, New York, Ohio, Pennsylvania, Rhode Island, Texas, Utah and Washington charged Equifax with violations of the FCRA.

12.    The government enforcement action required Equifax to improve its procedures and prevent mixed files.  *In re Equifax Credit Information Services, Inc.*, (June 22, 1992); *In the Matter of Equifax Credit Information Services, Inc.*, 12 F.T.C. 577 (Aug. 14, 1995); *In the Matter of Equifax Credit Information Services, Inc.*, 61 Fed. Reg. 15484 (Apr. 8, 1996).

13.    Trans Union has been known to mix consumers' files.

14.    In 2002, a jury found Trans Union violated the FCRA and awarded Judy Thomas $5.3 million ("Thomas verdict").

15.     In her lawsuit, Judy Thomas alleged Trans Union mixed her credit file with another consumer.

16.     Equifax has been known to mix files when consumers' names are similar, but the Social Security numbers match only seven out of nine digits.  *See Apodaca v. Discover Fin. Servs.*, 417 F.Supp. 2d 1220 (D.N.M. 2006).

17.     In 2007, Angela Williams sued Equifax in Florida and alleged the CRA mixed her file with another consumer.

18.     The case was presented to a jury.  The jury entered a verdict in favor of the plaintiff, Angela Williams, for over $2.9 million, including $219,000 in actual damages and $2.7 million in punitive damages.

19.     Since 2007, Equifax has been sued hundreds of times by consumers who alleged Equifax included information in their credit file which belonged to another consumer.

20.     For example, Julie Miller sued Equifax in Oregon.

21.     Julie Miller alleged Equifax mixed her file with another consumer in violation of the FCRA.

22.     The case was presented to a jury.

23.     The jury returned a verdict against Equifax for $18.6 million ("Miller verdict").

24.     Before this lawsuit, CoreLogic Credco, LLC knew about mixed files.

25.    For example, CoreLogic Credco, LLC, has been sued before wherein an allegation was made that CoreLogic Credco, LLC sold a consumer report that included information, which belonged information to another consumer.

26.    Despite federal law, Congressional mandates, federal and state government enforcement actions, the Thomas and Miller verdicts, and hundreds of consumer lawsuits, mixed files remain a significant problem for consumers, including Plaintiff.

27.    False information in a consumer's file harms the consumer.

28.    False information in a consumer's file misleads creditors as to the consumer's creditworthiness.

29.    False information in a consumer's file misleads creditors as to the consumer's credit history.

30.    The sale of American's most private and sensitive personal and financial information is a multi-billion dollar industry for the CRAs.

31.    In 2013, Equifax received over $2.3 billion dollars in revenue.[2]

32.    The instant lawsuit seeks compensatory, statutory and punitive damages, costs of suit and attorneys' fees for Plaintiff, resulting from the defendants' failure to comply with the FCRA.

---

[2] http://investor.equifax.com last visited November 22, 2014.

## JURISDICTION & VENUE

33.     This Court has jurisdiction pursuant to 15 U.S.C. §1681p.

34.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b).

## PARTIES

35.     Plaintiff Benny Selman ("Plaintiff") is an adult individual resident of this judicial district. Plaintiff is a "consumer" as defined by 15 U.S.C. §1681a(c).

36.     Defendant Equifax Information Services, LLC ("Equifax") is a Georgia corporation with its principal place of business in the state of Georgia. Equifax does business in this judicial district.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. §1681a(f).  Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. §1681a(f) to third parties.  Equifax disburses such consumer reports to third parties of contract for monetary compensation.

37.     CoreLogic Credco, LLC ("Credco"), is a foreign corporation with its principal place of business, upon information and belief, in the state of California. Credco does business in this judicial district.  Credco is a consumer reporting agency ("CRA") as defined by 15 U.S.C. 1681a(f) and a reseller of credit information.

38.     Credco regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined by 15 U.S.C. §1681a(f) to third parties.   Further, Credco disburses consumer reports to third parties of contract for monetary compensation.

39.     Credco, in its capacity as a consumer reporting agency and reseller of consumer information, obtains consumer credit information from nationwide consumer reporting agencies.   The consumer credit information maintained for individual consumers by the nationwide consumer reporting agencies includes public record information, collection accounts, trade accounts, personal identifying information and inquiries.   Once Credco receives the requested consumer credit information, it assembles and merges the information into a Credco credit report. Credco sells the credit report to third parties.   In the credit reporting industry, this is known as a "3 in 1" or "2 in 1" credit report.

40.     Credco sells consumer reports concerning individuals who apply for credit, including auto loans.

## FACTUAL ALLEGATIONS

41.     In or around December 2012, Credco provided a consumer report to Highline Imports in connection with Plaintiff's application for credit.

42.     Highline Imports denied Plaintiff's application for credit.

43.    The credit report Credco provided to Highline Imports included the false information detailed below.

44.    The information was false because it did not belong to Plaintiff.

45.    The false information described below belonged to another consumer.

46.    Before Credco sold Plaintiff's credit report, Credco did not reconcile inconsistencies in the report.

47.    Credco did nothing to assure the maximum possible accuracy of the information contained in the consumer report obtained from Equifax before Credco sold a consumer report to Highline Imports.

48.    Credco failed to assure the maximum accuracy of the consumer report concerning Plaintiff that it supplied to persons.

49.    The false information includes but is not limited to public records.

50.    More specifically, the false information includes the following information that does not belong to Plaintiff: (1) a judgment in favor of Capital One in the amount of $8,881.00 in Jefferson County District Court; and (2) a judgment in favor of Citi in the amount of 7,650.00 in Jefferson County District Court.

51.    The information is false because Plaintiff does not have a judgment entered against him by:  (1) Capital One; or (2) Citi.

52.    The false information harms Plaintiff's credit reputation because it does not accurately depict his credit worthiness.

53.    Equifax prepared and issued credit reports to third parties concerning Plaintiff that included false information.  Plaintiff notified Equifax that he disputed the accuracy of the information.  Equifax continued to report false information.

54.    The defendants' unlawful conduct proximately caused Plaintiff's actual damages, including but not limited to: denial of credit; harm to credit reputation; reduction in credit score; unfavorable credit terms; invasion of privacy; emotional distress and mental anguish; out-of-pocket expenses; interference with normal and usual activities; and time.

### COUNT 1 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(against Equifax)
(Negligent Noncompliance with FCRA)

55.    Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

56.    Equifax negligently failed to comply with the requirements of the FCRA.

57.    As a result of Equifax's failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with plaintiff's

normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury.

58.     Plaintiff requests fees pursuant to 15 U.S.C. §1681o(a).

### COUNT 2 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against Equifax)
(Willful Noncompliance with FCRA)

59.     Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

60.     Equifax willfully failed to comply with the requirements of the FCRA.

61.     As a result of Equifax's failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

62.     Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n(a).

### COUNT 3 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against CREDCO)
(Negligent Noncompliance with the FCRA)

63.     Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

64.     Credco negligently failed to comply with the requirements of Section 1681e(b) of the FCRA.

65.     As a result of Credco's failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury.

66.     Plaintiff requests fees pursuant to 15 U.S.C. §1681o(a).

### COUNT 4 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (Against CREDCO)
### (Willful Noncompliance with the FCRA)

67.     Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

68.     Credco willfully failed to comply with the requirements of Section 1681e(b) of the FCRA.

69.     As a result of Credco's failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to

reputation, invasion of privacy, emotional distress and interference with plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

70.     Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n(a).

71.     Plaintiff requests a jury trial on all claims.

## PRAYER

Wherefore, Plaintiff prays for judgment against Defendants as follows:

On the First Claim for Relief:

1.     Actual damages to be determined by the jury; and

2.     Attorneys' fees and costs.

On the Second Claim for Relief:

1.     Actual damages to be determined by the jury;

2.     Punitive damages to be determined by the jury;

3.     Statutory damages to be determined by the jury; and

4.     Attorneys' fees and costs.

On the Third Claim for Relief:

1.     Actual damages to be determined by the jury; and

2.     Attorneys' fees and costs.

On the Fourth Claim for Relief:

1.      Actual damages to be determined by the jury;

2.      Punitive damages to be determined by the jury;

3.      Statutory damages to be determined by the jury; and

4.      Attorneys' fees and costs.

Dated:          November 24, 2014

                        Respectfully submitted,

                        /s/ Micah S. Adkins
                        Micah S. Adkins (ASB-8639-I48A)
                        **THE ADKINS FIRM, P.C.**
                        301 19th Street North, Suite 581
                        The Kress Building
                        Birmingham, Alabama 35203
                        Telephone:  205.458.1202
                        Facsimile:  205.208.9632
                        Email:       MicahAdkins@ItsYourCreditReport.com